### WILLIAMS *against* CHEESEBOROUGH.

Though the return of an officer on process is generally conclusive against him ; yet where a fact is stated in the return, which, from the nature of the case, must be matter of opinion only, parol evidence is admissible to explain it.

Therefore, where the defence, in an action of trespass for taking goods, which the plaintiff claimed under a bill of sale from *P.*, executed on the 29th of *July*, was, that the defendant took them as an officer, by virtue of a writ of attachment against *P.*, which, according to his return, was served on the same 29th of *July*, the defendant was permitted to shew, for the purpose of evincing a priority in favour of the attachment, that it was in fact served at an earlier hour in the day than that specified in the return.

Where it became material, for the purpose of discrediting testimony adduced by the opposite party, to prove, that a certain person brought a writ in a certain action, to the witness, who was an officer, and directed him to serve it ; it was held, that parol evidence of such fact was admissible, without producing the record.

Where the judge, in submitting a cause to the jury, instructed them, that "if an officer should go into a store of goods, with a lawful writ, to make service, make his business known, take out his attachment, and while in the act of seizing a bale of cloth, and before actual touch, be forcibly arrested, and thrust out, this would be such an incipient act, as would give him a right to return and complete his service as soon as in his power, and no intermediate transfer of the property could operate to defeat him ;" it was held, that such direction was incorrect : But as there were no facts in the case, which called for the expression of an opinion on that point, and no practical effect resulted from it ; it was also held to furnish no ground for a new trial.

Where the judge, in a case depending on the question, whether a conveyance was fraudulent as against creditors, instructed the jury, that in order to render the conveyance valid, " the property transferred must be estimated at its fair value, and the debt to which it is to be applied must be liquidated, adjusted and cancelled ;" it was held, that this was a misdirection, as the jury must have understood from it, that a conveyance unaccompanied by these tests, was absolutely fraudulent.

This was an action of trespass, for taking and carrying away from the plaintiff's possession certain goods.

The cause was tried at *New-London, January* term, 1821, before *Brainard,* J.

The plaintiff claimed property in the goods, by virtue of a

bill of sale from *Ebenezer Prentis*, dated *July* 29th, 1820. The
defendant claimed a special property in them, by virtue of
an attachment, in favour of one *Mudge* against *Prentis* and
others, which he levied on them the same day. The grounds
on which the defendant attempted to support his claim, were,
first, that the bill of sale to the plaintiff was fraudulent ; and
secondly, that the service of the attachment was prior to it,
in point of time. The return made by the defendant on the
attachment, stated, that on the 29th day of *July*, 1820, at 5
o'clock, *P. M.* he attached the goods in question, as the es-
tate of *Prentis.* The plaintiff contended, that the defendant,
as to the relative time of the delivery of the bill of sale and
of the service of the attachment, was confined to, and conclu-
ded by, the precise hour which he had stated in his return.
But the judge suffered the defendant to produce evidence to
prove, that in point of fact, his service of the attachment was
prior to the execution of the bill of sale.

In the course of the trial, the plaintiff introduced *Prentis* as
a witness for him. To impeach his testimony, the defendant
offered *Henry Jepson,* a constable of the town of *New-London,*
to testify, that on the        day of *August,* 1820, *Prentis* brought
to him, and directed him, as constable, to serve a writ in his
(*Prentis's*) favour, against the defendant, for a trespass in rela-
tion to the same goods as those contained in the bill of sale to
the plaintiff. To the admission of this testimony of *Jepson*
the plaintiff objected ; but the judge admitted it ; and he tes-
tified accordingly.

The judge, in his charge, after stating the case, and the
claims of the parties respectively, proceeded as follows :
"Here it becomes necessary to ascertain what acts are ne-
cessary in law to constitute an attachment. As a general rule,
the officer must seize the property, by actual touch. In the
case of a store of goods, it is sufficient, if he seize a part, in the
name and view of the whole, having the natural power, with-
out obstruction, of seizing the whole. So, an officer may
make service of an attachment, without actual seizure or
touch ; as in case of a drove of mules, a flock of sheep, or a
herd of young cattle ; provided he take the possession of them,
which is usual, and of which they are susceptible. So, also,
where an officer begins his service, and does an incipient act,
and is interrupted by actual force, no intermediate disposi-
tion of the property shall prejudice him, or prevent his re-
turning, as soon as in his power, and completing his service.

Williams
*v.*
Cheesebrough

And I should hold it as law, that should an officer, for instance, go into a store of goods, with a lawful writ, to make service, make his business known, take out his attachment, and while in the act of seizing a bale of cloth, and before actual touch, be forcibly arrested and thrust out; this would be such an incipient act, as would give him a right to return and complete his service as soon as in his power; and that no intermediate transfer of the property could operate to defeat him. So, where an officer has once begun his service, and is necessarily or providentially called away, and leaves a person whom he has called to his assistance, and such person is forcibly thrust out; the officer has the same right to return, and complete his levy as above stated.

" As to bills of sale or transfers of property, made, by a debtor, in failing or embarrassed circumstances; the law allows him to give a preference to his creditors. It looks, however, upon all such conveyances, not to say, with a jealous, but with a scrutinizing eye. The transaction must be as open and as public as the nature of it will, with propriety, admit. The debt must be *bona fide.* The property transferred must be estimated at its fair value; and the debt, to which it is to be applied, must be liquidated, adjusted and cancelled. Whether a conveyance is fraudulent or not, is, however, a question of fact for the jury to decide."

The jury returned a verdict for the defendant; and the plaintiff moved for a new trial, on the ground of the admission of improper testimony, and of a misdirection.

*Cleaveland* and *Isham*, in support of the motion, contended, 1. That the defendant's return was conclusive against him, as to the time of service mentioned in it. *Dalt. Sher.* 168. *Grant* v. *Shaw* & al. 1 *Root* 526. *Gardner* v. *Hosmer,* 6 *Mass. Rep.* 325. 327. *Williams* & al. v. *Brackett,* 8 *Mass. Rep.* 240. *Doty* v. *Turner,* 8 *Johns. Rep.* 20. *Denton* & al. v. *Livingston,* 9 *Johns. Rep.* 96. The enquiry, on the trial, was, whether the service of the attachment was not commenced before the time stated in the return. This, the officer who made the return, could not shew. He could neither contradict nor explain his return.

2. That the testimony of *Jepson*, as to the writ and declaration in favour of *Prentis* against *Cheeseborough*, was inadmissible. The fact should have been proved, by the record, which would shew when the writ bore date, when it was ser-

ved, and what were the contents of the declaration. Besides,
that declaration, if regularly proved, could not, in this action,
be evidence of the facts stated in it.

3. That that part of the charge was incorrect, which asserted, that if an officer goes into a store with an attachment, makes his business known, takes out his writ, and while in the act of seizing the goods, and *before actual touch,* is thrust out, the service of the attachment is begun. In that case, the officer would have neither the actual nor constructive possession ; one of which is essential to constitute " an incipient act" of the service. *Lane* & al. v. *Jackson,* 5 *Mass. Rep.* 157. 163, 4.

4. That the direction relative to fraudulent conveyances, was incorrect. The proposition, that the property transferred must be estimated at its fair value, and the debts to which it is to be applied, must be liquidated, adjusted and cancelled, in the unqualified terms in which it is laid down in the charge, cannot be supported. The judge ought to have submitted to the jury, as the great question of fact in this part of the case, with what *intent* the conveyance was made. The charge, in the form in which it was given, was calculated to mislead the jury. *Holbird* v. *Anderson* & al. 5 *Term Rep.* 235. *Beals* v. *Guernsey,* 8 *Johns. Rep.* 446. *Wickham* v. *Miller,* 12 *Johns. Rep.* 320. 323, 4.

*Goddard* and *Law,* contra, contended, 1. That although it is true, as a general rule, that an officer cannot be permitted to contradict his own return ; yet the evidence adduced by the defendant, in this case, did not go to contradict his return, but to evince a material fact not inconsistent with it ; *viz.* that the attachment was lawfully begun before the time stated in the return, and then completed according to the return ; which relates to the completion of the levy. The officer might do such acts as would bind the property ; and yet the legal attachment might not be completed until hours afterwards. In general, the precise time, when the service of an attachment was commenced, is not material. When it becomes material, the officer may shew the facts.

2. That the testimony of *Jepson* was admissible to discredit that of *Prentis* previously given. He was introduced to prove a *fact.* It did not render him incompetent, that he referred to the writ and declaration. This he did merely to identify them ; to shew what he was testifying about.

*New-London,*
*July,*
*1822.*

Williams
*v.*
Cheesebrough

3. That there was nothing incorrect in the charge *as applicable to the facts in this case.* The court must see a state of facts, to which the doctrine stated in the charge might be applied by the jury, or a new trial will not be granted, whether such doctrine were correct, or otherwise. The cases referred to in the charge, are cases supposed, for the purpose of illustration merely. Further, the doctrines of the charge are susceptible of vindication, as abstract propositions.

HOSMER, Ch. J. Two general questions have been litigated in this case : First, Whether the attachment, under which the defendant claims title, was prior to the plaintiff's bill of sale ; and secondly, Whether the bill of sale was fraudulent as to creditors.

The attachment was served, and the bill of sale executed, on the same day ; and in ascertaining the point of priority, it became necessary to institute a particular enquiry, relative to the precise moment, in which the former was levied, and the latter was delivered. The defendant, very unnecessarily, made a return on the attachment, that he served it *at five o'clock ;* and testimony was admitted to prove, that, in point of fact, the levy of the attachment was prior to the execution of the bill of sale. This enquiry was obviously necessary ; and, in this view of the subject, the motion for a new trial would seem to raise no question. But, although the fact is not directly stated, yet from the principle contended for, by the plaintiff, and the argument of the counsel, on both sides, it is, perhaps, fairly to be assumed, that the defendant, in his testimony, was not confined to the precise moment, at which the levy was professed to have been made, but was permitted to show, that the time was prior to the hour specified. To this the plaintiff objects, that the return is *conclusive* against the defendant ; and as a general legal truth, it undoubtedly must be admitted. *Gardner* v. *Hosmer,* 6 *Mass. Rep.* 325. 327. *Williams* & al. v. *Brackett,* 3 *Mass. Rep.* 240. *Denton* & al. v. *Livingston,* 9 *Johns. Rep.* 96. 98.

But, the question arises, whether the return of the levy, *at 5 o'clock,* is matter of *fact,* or of *opinion.* From the nature of the case, it can be nothing more than the latter. I am well aware, that in *Clark* v. *Withers,* 6 *Mod. Rep.* 290. Lord *Holt,* in commenting on a return of the sheriff, that he had seized goods for the value of a *fi. fa.,* expressed an

opinion, that "he must answer for the value returned." *New-London,* But, as the goods remained in the sheriff's hands *pro defectu* *July,* *emptorum,* the return presented the only possible test of *1822.* their value; and from the case referred to, it is, at least, Williams doubtful, whether the opinion is applicable to one different- *v.* ly circumstanced. Be this as it may, the case of *Sly* v. Cheesebrough *Finch, Cro. Jac.* 514., furnishes a rational and correct rule, founded upon a reason, satisfactory and convincing. The sheriff who returns "*quod cepi catalla ad valentiam,* 100 *l.,* which cattle die for want of meat, shall be responsible for the specified value; because "it is now impossible they should be reduced to any other certainty." There is an analogy between the return in the case last cited, and the one on the attachment under discussion. The value returned, from the nature of the case, is opinion merely, but may become the criterion from absolute necessity. In the same manner, it may be said, the *precise moment* returned, is but opinion, although from the impossibility of any other standard, it may be conclusive on the sheriff. Viewing it in this light, I do not consider it to be a fact, which does not admit of an explanation; but as *prima facie* indicative of the true time, when it cannot otherwise be ascertained. This is treating the return, not according to the words precisely, but conformable to its nature. It was impossible that the sheriff should know, from his judgment or his watch, that 5 o'clock was the exact period of his levy; and this opinion of his, unnecessarily returned, ought not to be considered as a conclusive averment of fact. In my judgment, testimony admitted to show the moment when the levy took place, ought not to have been repelled, by reason of the return in this case.

The testimony of *Jepson,* when correctly understood, was altogether, unexceptionable. This evidence was not received, to prove the existence or contents of a writ against the defendant; but the same having been evinced, by the record, he was permitted to testify, that he was directed to serve it, by *Ebenezer Prentis.* Of the competency of this evidence, there exists no question; and to its relevancy, no objection has been made.

The charge of the Judge, that there may be an attachment of goods, which the officer has not touched, and of which he had not the actual or constructive possession, is unquestionably incorrect; but, in this case, it is merely a speculative

*New-London,* question ; no facts having called for the expression of the
July,
1822.
opinion, and no practical effect having resulted from it.

Williams
*v.*
Cheesebrough

Thus far, I see no ground for a new trial ; and the remaining objection, if the motion had possessed the requisite precision, would probably have been equally unavailing. Guided, however, by the motion, I cannot say, that the jury were rightly informed. It became material for the court to instruct them in the principles applicable to a contract, made in fraud of creditors ; and it would seem they were told, that " the property must be estimated at its fair value, and the debt must be liquidated, adjusted and cancelled," or the agreement would be considered fraudulent. The jury undoubtedly understood, that a contract, unaccompanied by these tests, was, absolutely and unexplainably, a fraud on creditors. Had they been informed, that these were *badges of fraud*, which required a satisfactory explanation, and without this, that they were presumptive of covin, the charge would have been unexceptionable. But it was too much to declare, that they proved a fraud beyond the possibility of refutation.

The other Judges were of the same opinion.

New trial to be granted